IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON

EUGENE DIVISION

| | | |
|---|---|---|
| NOEL J. HIGGINS, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | 6:12-CV-01391-JO |
| v. | ) | |
| | ) | |
| CAROLYN W. COLVIN, Acting Commissioner of | ) | OPINION AND ORDER |
| Social Security, | ) | |
| | ) | |
| Defendant. | ) | |

JONES, J.,

Plaintiff Noel Higgins appeals the Commissioner's decision denying his application for disability insurance benefits under Title II of the Social Security Act. The court has jurisdiction under 42 U.S.C. § 405(g). I AFFIRM the Commissioner's decision.

## PRIOR PROCEEDINGS

Higgins filed his application in June 2009 alleging disability due to bipolar disorder. He alleged he became disabled in November 2008, at the same time he retired after working as a hospital laundry aide for nearly 24 years. Admin. R. 34, 129, 137. The ALJ applied the sequential disability determination process described in 20 C.F.R. section 404.1520. *See Bowen v. Yuckert*, 482 U.S. 137, 140 (1987). The ALJ found Higgins's ability to work was limited by a cognitive disorder and schizoaffective disorder. Admin. R. 20. The ALJ found that, despite his mental impairments, Higgins retained the residual functional capacity ("RFC") to perform work at all exertional levels,

-1-  OPINION AND ORDER

but was limited to simple, routine tasks that involve no more than occasional interaction with the public. Admin. R. 21.

The ALJ compared Higgins's RFC to his statements regarding the demands of his former work in the hospital laundry and concluded that Higgins retained the capacity to perform that job. Admin. R. 24. In addition, the vocational expert ("VE") testified that the occupation laundry aide required the mental capacity to perform unskilled work. Admin. R. 51. The ALJ found that Higgins's retained the RFC to perform his former work as a laundry aide as he had actually performed that job in the past and as the occupation is generally performed in the national economy. Admin. R. 24. The ALJ concluded that Higgins was not disabled within the meaning of the Social Security Act. Admin. R. 24.

## STANDARD OF REVIEW

The district court must affirm the Commissioner's decision if it is based on proper legal standards and the findings of fact are supported by substantial evidence in the record as a whole. 42 U.S.C. § 405(g); *Batson v. Comm'r of Soc. Sec. Admin.,* 359 F.3d 1190, 1193 (9th Cir. 2004). Under this standard, the Commissioner's factual findings must be upheld if supported by inferences reasonably drawn from the record even if evidence exists to support another rational interpretation. *Batson,* 359 F.3d at 1193; *Andrews v. Shalala,* 53 F.3d 1035, 1039-40 (9th Cir. 1995).

## DISCUSSION

### I.    Claims of Error

Higgins contends the ALJ failed to assess his RFC accurately because he improperly discredited Higgins's subjective statements and the statements of his daughter Michelle Higgins,

discounted the opinion of Jeffrey Lenox, M.D., failed to develop the record adequately, and relied on information obtained through ex parte communication with the VE.

## II.   Credibility Determination

Higgins contends the ALJ improperly discounted his statements about the limiting effects of his impairments.   Higgins said that when he was cleaning hospital rooms, he had trouble concentrating, would forget to clean something in the room, was unable to work fast enough, and was unable to get the job done.  Admin. R. 22, 129.

The ALJ accepted Higgins's statements that he experienced difficulty with concentration, forgetfulness, some social settings, and work under time pressure.  Indeed, the ALJ found Higgins's statements not fully credible only insofar as they suggested that his symptoms were so limiting that they left him unable to do work involving only simple, routine tasks with no more than occasional interaction with the public.  Admin. R. 21-22.  The ALJ did not say that he rejected Higgins's statements because they were inconsistent with the RFC assessment, as Higgins's incorrectly asserts. Pl.'s Br. 14. Accordingly, Higgins's argument regarding circular reasoning has no merit.

Because the ALJ found that Higgins's impairments could reasonably be expected to produce some of his alleged symptoms, and there was no evidence of malingering, the ALJ was required to assess Higgins's credibility regarding the severity of symptoms.   An adverse credibility determination must include specific findings supported by substantial evidence and clear and convincing reasons. *Carmickle v. Comm'r, Soc. Sec. Admin.*, 533 F.3d 1155, 1160 (9th Cir. 2008); *Smolen v. Chater*, 80 F.3d 1273, 1281-82 (9th Cir. 1996).  The findings must be sufficiently specific to permit the reviewing court to conclude that the ALJ did not arbitrarily discredit the claimant's testimony. *Tommasetti v. Astrue*, 533 F.3d 1035, 1039 (9th Cir. 2008).

-3-  OPINION AND ORDER

In assessing credibility, an ALJ must consider all the evidence in the case record, including the objective medical evidence, the claimant's treatment history, medical opinions, daily activities, work history, the observations of third parties with knowledge of the claimant's functional limitations, and any other evidence that bears on the consistency and veracity of the claimant's statements. *Tommasetti*, 533 F3d at 1039; *Smolen*, 80 F3d at 1284; SSR 96-7p, 1996 WL 374186, at *5.

The ALJ's decision demonstrates that he considered all the evidence relating to the proper factors for evaluating credibility. He discussed the medical evidence, citing the findings of Dr. Lenox and Gary Monkarsh, Ph.D. Dr. Lenox monitored Higgins at intervals of approximately six months beginning sometime before November 2006. Admin. R. 249. With respect to intellect and cognition, Dr. Lenox found that Higgins was "mildly intellectually impaired but overall, is functional." Admin. R. 248. With respect to bipolar or schizoaffective disorders, Dr. Lenox consistently found Higgins's symptoms under good control on a medication regimen of Zyprexa and Wellbutrin. The progress notes reflect that Higgins consistently told Dr. Lenox he was doing well without mood swings, instability, or psychotic symptoms and that his medication caused only occasional mild side effects that did not affect function. Admin. R. 22-23, 242-49, 344, 387-88. Impairments that are effectively controlled by medication are not disabling. *Warre v. Comm'r of Soc. Sec. Admin.,* 439 F.3d 1001, 1006 (9th Cir. 2006).

In November 2009, Dr. Monkarsh performed a psychiatric evaluation of Higgins for the Department of Veterans Affairs ("VA"). Higgins told Dr. Monkarsh he had a long history of psychotic disorder, but had no symptoms as long as he took Zyprexa and Wellbutrin. Dr. Monkarsh found no indication of any symptoms since the early 1980s and concluded Higgins's past mental

disorder was in full remission. He found no current signs of a psychotic or other mental disorder, but noted schizoid personality traits reflected in Higgins's limited social life outside of family relationships. Admin. R. 371-74. As the ALJ found, Higgins's mental illness manifested in 1974 but then medication improved his condition making him stable and able to work from 1984 until the present. Admin. R. 22, 137, 371-74. Medical improvement from treatment supports an adverse inference as to the credibility of a claim that disability is ongoing. *Morgan v. Comm'r of Soc. Sec.,* 169 F3d 595, 599 (9th Cir. 1999); *Tidwell v. Apfel,* 161 F.3d 599, 601 (9th Cir. 1998).

The ALJ considered Higgins's treatment record which confirmed that his mental impairments are long term conditions that persisted for many years before his disability allegedly commenced in November 2008. Admin. R. 22. In addition, it shows that Higgins's mental health did not change at all at the time he says he became disabled. There is no evidence of a psychiatric hospitalization, an episode of decompensation, or even a change in medication dosage. When Higgins allegedly became disabled, he was receiving only medication management from Dr. Lenox and and routine care for a benign fainting episode, blood pressure control, sleep apnea, and prostate health. Admin. R. 223, 237, 268, 403. Treatment that is conservative or minimal supports an adverse inference as to the claimant's credibility regarding subjective claims of disabling symptoms. *Parra v. Astrue,* 481 F3d 742, 750-51 (9th Cir. 2007); *Meanal v. Apfel,* 172 F3d 1111, 1114 (9th Cir. 1999).

The ALJ also considered Higgins's work history, which shows that he successfully performed his laundry job at the hospital from 1984 until the job was outsourced in 2008. At that time, he was given the option to switch to janitorial work at the hospital or to retire. After working as a janitor for a few months, he chose to retire. His employer told him he could continue working and there is no indication that the employer found fault with his performance. Admin. R. 22, 34, 129, 137.

When a claimant stops working for reasons other than disability the ALJ may draw an adverse inference as to his credibility. *Bruton v. Massanari,* 268 F.3d 824, 828 (9th Cir. 2001).

The ALJ also considered Higgins's daily activities, noting that he performs volunteer work, serves as trustee of a Knights of Columbus group, participates in household chores, and independently cares for his personal hygiene, grooming, and so forth. Admin. R. 22. While these activities are not equivalent to employment, they do support the ALJ's conclusion that Higgins is capable of simple, routine tasks without excessive public contact.

The ALJ's findings are supported by substantial evidence in the record and are sufficiently specific for me to conclude that the ALJ did not arbitrarily reject Higgins's subjective statements. His reasoning is clear and convincing and the credibility determination will not be disturbed. *Tommasetti*, 533 F.3d at 1039; *Carmickle*, 533 F.3d at 1160.

## III.    Lay Witness Statement

Higgins's daughter Michelle Higgins testified that he has poor social skills, personal space issues, and difficulty concentrating such that he requires direction. Admin. R. 45. She thought Higgins's social skills had worsened over time and he seemed to need reassurance. Admin. R. 46. Before retiring, Higgins would sometimes come home upset because a couple of coworkers picked on him. Admin. R. 48. Michelle Higgins testified that Higgins generally functioned well when working as a laundry aide, in part because he had a compassionate boss. He had difficulty when he was moved to janitorial work, because he could not keep up, clean the rooms properly, or follow directions. Michelle Higgins believed that, although her father's employer called it retirement, Higgins was let go because of his inability to keep up. Admin. R. 49.

Higgins contends the ALJ silently disregarded his daughter's testimony. Pl.'s Br. 10. An ALJ must consider the testimony of a lay witness, unless the ALJ gives reasons, germane to the witness, for discounting the testimony. *Valentine v. Comm'r of Soc. Sec. Admin.*, 574 F.3d 685, 694 (9th Cir. 2009). The ALJ need not clearly link the reasons to his decision that the lay witness testimony should be discounted, as long as he notes germane reasons somewhere in the decision and they are supported by substantial evidence. *Lewis v. Apfel*, 236 F.3d 503, 512 (9th Cir. 2001).

The ALJ considered Michelle Higgins's testimony and accepted her statements that Higgins functioned well as a laundry aide but had poor social skills and difficulty concentrating such that he required direction. Admin. R. 23. The ALJ did not find Michelle Higgins's testimony inconsistent with his RFC assessment limiting Higgins to simple, routine tasks without a great deal of public contact. Accordingly, the ALJ did not reject or ignore the lay witness testimony and was not required to state reasons for doing so.

If the ALJ discredited her testimony at all, it was only insofar as her statements suggested that the impairments she described were so limiting that they would preclude Higgins from work involving only simple, routine tasks and limited contact with the public. The ALJ's decision includes germane reasons for this conclusion supported by substantial evidence. In particular, as discussed previously, the ALJ found that Higgins's mental disorder has been controlled by medication for many years and did not preclude him from performing his past work as a laundry aide. This reasoning provides an adequate basis for the ALJ's evaluation of the lay witness testimony. *Valentine*, 574 F.3d at 694; *Lewis*, 236 F.3d at 512.

Even if Michelle Higgins's testimony could be interpreted differently, in a manner that was inconsistent with the RFC assessment as Higgins urges, the court must uphold the ALJ's

interpretation because it is supported by inferences reasonably drawn from the record. *Molina v. Astrue*, 674 F.3d 1104, 1110 (9th Cir. 2012); *Batson*, 359 F.3d at 1193; *Andrews*, 53 F.3d at 1039-40.

## VI.    Medical Opinion

As described previously, Dr. Lenox managed Higgins's mental health medications beginning at least as early as November 2006. Admin. R. 249. His progress notes indicate that Higgins's symptoms were controlled by medication for many years, that he had mild intellectual impairment but remained functional, and that he did well at work for over twenty years despite his mental disorder and mild intellectual deficit. Admin. R. 242, 244, 246-47, 248, 344.

In January 2011, Dr. Lenox completed a worksheet provided by Higgins's attorney titled "Medical Source Statement." Admin. R. 468-70. With respect to each of the four broad categories of mental function, *viz.* activities of daily living, maintaining social function, maintaining concentration, persistence or pace, and episodes of decompensation, Dr. Lenox selected "none/mild" to describe Higgins's level of functional limitation. Admin. R. 469. Findings of none or mild in all four categories supports a conclusion that the mental impairment does not meet the severity requirement at step two of the disability determination process; such findings support a determination that the claimant is not disabled. 20 C.F.R. § 404.1520a(d)(1). In this respect, Dr. Lenox's opinion fully supports the ALJ's determination that Higgins was not disabled.

In his narrative comments, Dr. Lenox said that Higgins's schizoaffective disorder had been stable for years dating back to long before he stopped working as a laundry aide. He said Higgins's ability to work would be affected more by his cognitive/intellectual capacity than by his schizoaffective disorder. Admin. R. 470. He said Higgins's "intellectual limitations had not

changed since I have known him." Admin. R. 469.  In other words, Dr. Lenox indicated that Higgins's intellectual capacity was his primary work impediment and had not changed since long before he stopped working as a laundry aide.  The ALJ reasonably concluded that Dr. Lenox's opinion was consistent with the RFC assessment and with the ultimate determination that Higgins could perform his past work as a laundry aide.  Admin. R. 23.  In this respect also, Dr. Lenox's opinion fully supports the ALJ's determination.

The Medical Source Statement worksheet also asked Dr. Lenox to rate Higgins's capacity with respect to 17 mental activities associated with work.  Dr. Lenox selected "Good" to describe Higgins's capacity on most of the activities, but with respect to working with detailed instructions and maintaining attention for extended periods, Dr. Lenox selected both "Fair" and "Poor."  Admin. R. 468-69.  The double selection of Fair and Poor reasonably suggests that Dr. Lenox thought Higgins's ability was Fair in some work circumstances but Poor in others.  This interpretation is supported by Dr. Lenox's explanatory narrative comment that the significance of Higgins's intellectual limitations would vary "depending on the type of work."  Admin. R. 469.  Taking the Medical Source Statement as a whole, in context with Dr. Lenox's treatment notes, it is reasonable to infer that Dr. Lenox did not believe Higgins's limitations precluded simple, routine work such as his former work as a laundry aide.  Accordingly, the ALJ's interpretation of Dr. Lenox's opinion as consistent with the RFC assessment was not unreasonable.  Even if Dr. Lenox's opinion is susceptible to an interpretation more favorable to Higgins, the court must uphold the ALJ's interpretation because it is supported by inferences reasonably drawn from the record. *Molina*, 674 F.3d at 1110; *Batson*, 359 F.3d at 1193; *Andrews*, 53 F.3d at 1039-40.

Higgins argues that poor abilities in working with detailed instructions and maintaining attention are inconsistent with the reasoning levels set out in the *Dictionary of Occupational Titles* ("DOT") for work as a laundry aide. This argument is misplaced because it addresses only one prong of the step four analysis. At step four of the disability determination process, a claimant must show that he can perform neither the actual functional demands and job duties of a past relevant job as he performed it, nor the functional demands and job duties of the occupation as generally required by employers throughout the national economy. Social Security Ruling ("SSR") 82-61, *available at* http://www.socialsecurity.gov/OP—Home/rulings/di/02/SSR82-61-di-02.html; 20 C.F.R. § 404.1560(b)(2); . Higgins's argument based on the reasoning level in the DOT addresses only the functional demands of an occupation as generally performed in the national economy. *Pinto v. Massanari*, 249 F.3d 840, 845 (9th Cir. 2001). Regardless of how Dr. Lenox's opinion affects that prong of the analysis, it fully supports the ALJ's conclusion that Higgins remains capable of performing the laundry aide job as he actually performed it. Accordingly, Higgins has failed to identify any error in the ALJ's evaluation of Dr. Lenox's opinion.

## V.    **Development of the Record**

Higgins contends the ALJ failed to fully develop the record because he did not order a psychological evaluation as suggested by Dr. Lenox. In his Medical Source Statement, Dr. Lenox said he would support neuropsychological testing to better describe Higgins's cognitive/intellectual limitations. Admin. R. 470. An ALJ has a duty to assist the claimant in developing the record. *DeLorme v. Sullivan*, 924 F.2d 841, 849 (9th Cir. 1991). The ALJ did so in case, by obtaining medical records, written statements, and testimony from the health care providers and third party witnesses Higgins identified. *See Bowen v. Yuckert*, 482 U.S. 137, 140 n. 5 (1987) (claimant is in

the best position to provide information about his medical condition and identify sources of such information).

An ALJ's duty to develop the record further is triggered only when there is ambiguous evidence or when the record is inadequate to allow for proper evaluation of the evidence. *Mayes v. Massanari*, 276 F.3d 453, 459-60 (9th Cir. 2001). Dr. Lenox's support for further testing did not trigger the ALJ's duty to conduct further inquiry. Dr. Lenox observed that Higgins's cognitive/intellectual capacity had not changed in the time they had known each other, *i.e.* since at least November 2006. Admin. R. 469. Higgins's cognitive/intellectual limitations did not prevented him from doing his former job as a laundry aide, which he continued until it was outsourced in 2008. While further testing might be useful in determining other work appropriate for Higgins, Dr. Lenox's opinion was adequate to show that Higgins remained capable of performing his past job as a laundry aide. There is no ambiguity or inadequacy regarding that question and the ALJ had no duty to obtain testing.

## VI.    Ex Parte Contact

Higgins contends the ALJ had improper ex parte contact with the VE regarding Higgins's Work History Report. On his Work History Report, Higgins indicated that he worked for five months in 2008 under the job title "Environmental Services Worker." Admin. R. 137. At the hearing, Higgins described that work as janitorial in nature, involving the cleaning of patient rooms and public bathrooms in a hospital. Admin. R. 33-34. The ALJ then asked the VE, "Does that answer your question?" Admin. R. 34. The VE replied that it did and thanked the ALJ for the clarification. The ALJ then said, "Because we had a question on what that was before the hearing." Admin. R. 34.

Higgins argues that this exchange shows that the ALJ had ex parte communications with the VE outside the hearing in violation of the requirement that the ALJ's decision must be based on evidence adduced at the hearing or otherwise included in the record. 42 U.S.C. § 405(b)(1); 20 C.F.R. § 404.953(a).

The party claiming error has the burden of demonstrating both the error and that it was harmful. *Ludwig v. Astrue*, 681 F.3d 1047, 1054 (9th Cir. 2012). Higgins fails in both respects. Although the VE asked the ALJ off the record about Higgins's past work as an Environmental Services Worker, the ALJ cured any error by putting the question to Higgins on the record during the hearing. Admin. R. 33-34. Accordingly, the ALJ did not base his decision on evidence that was not included in the record, and Higgins had a full opportunity on the record to explain or rebut or inquire further on the topic. Furthermore, the evidence regarding Higgins's past work as an Environmental Services Worker had no bearing on the ALJ's determination that Higgins retained the capacity to perform his past work as a laundry aide. Accordingly, Higgins's argument that it is "highly probable" that the ex parte contact influenced the ALJ's decision is without merit. Pl.'s Br. 18.

## CONCLUSION

For the foregoing reasons, the Commissioner's final decision is AFFIRMED.

DATED this ___11___ day of September, 2013.

Robert E. Jones, Senior Judge
United States District Court

-12- OPINION AND ORDER